CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

FEB 0 6 2008

JOHN F. CORCORAN, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| M/A-COM, INC. | : | Civil Action No. 6:07cv00012 |
| Plaintiff | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| SEOUL COMMTECH CO., LTD., | : | JUDGE NORMAN K. MOON |
| Defendant | : | |

This matter is before the Court on Defendant's Motion to Dismiss or Stay pursuant to Federal Rule of Civil Procedure 12(b)(2) and Sections 3 and 206 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (docket entry no. 8). Although I find that Defendant has sufficient contacts with Virginia to satisfy the Virginia Long-Arm Statute and thereby establish personal jurisdiction, I find that the underlying basis for this dispute is subject to an arbitration provision. Accordingly, I will GRANT Defendant's motion to dismiss and will ORDER this matter stricken from the docket.

## I. BACKGROUND

This matter arises out of a contract dispute between the plaintiff, M/A-COM, Inc. ("M/A-COM"), and the defendant, Seoul Commtech Co., Ltd. ("SCC"), over the sale of 15,000 data radios. The plaintiff, M/A-COM, is a developer of mobile radio products incorporated in Florida with its principal place of business in Lynchburg, Virginia. The defendant, SCC, is an electronic distributor located in the Republic of Korea.

In 2002, SCC contacted M/A-COM to inquire about developing a customized data radio that SCC intended to resell to Korea Electric Power Company ("KEPCO"), an electric utility provider in South Korea. The parties engaged in extensive negotiations over the next eighteen months by telephone and electronic mail with regard to the technical specifications required of the radio, the price per radio, and the number of units required. As part of the negotiations, executives of both SCC and KEPCO traveled to Lynchburg to inspect and test prototypes of the custom-designed data

radio.

The parties finally reached an agreement in September 2003. On September 2, 2003, the parties signed an International Distributor Agreement effective from September 1, 2003 to August 31, 2005, to govern all transactions between the parties. This agreement included, among other things, a provision to arbitrate any and all disputes between the parties at the International Chamber of Commerce ("ICC") in Washington, D.C. Two days later, the parties entered a letter agreement in which M/A-COM agreed to deliver a minimum of 15,000 of the custom-built data radios to SCC for $460.00 per radio.

On December 1, 2003, SCC issued two purchase orders to M/A-COM for the 15,000 data radios. M/A-COM immediately began assembly of the data radios and informed SCC that 1,000 units would be available for delivery in March 2004 and that an additional 2,000 units would be available per month after that date. However, SCC accepted delivery for only a fraction of the 15,000 data radios in 2004 and 2005 despite assurances that it intended to comply with the September 4, 2003 letter agreement.

On July 28, 2006, SCC sent a letter to M/A-COM repudiating the September 4, 2003 letter agreement. In this letter, SCC denied that it had an obligation to purchase the 15,000 data radios and refused to pay M/A-COM for the data radios built to date. In response, M/A-COM filed a Notice of Demand and Request for Arbitration with the ICC on March 13, 2007, alleging, among other things, breach of contract and fraudulent misrepresentation. SCC initially objected to the arbitration by filing a jurisdictional objection with the ICC on April 20, 2007, but later withdrew this objection. M/A-COM filed the instant action on May 14, 2007, before SCC withdrew its objection to arbitration. M/A-COM asserts claims of breach of contract and fraud in the inducement

2

and requests compensatory damages in excess of $6,000,000. SCC has moved to dismiss the suit, arguing that this Court lacks personal jurisdiction over SCC or, alternatively, that the Federal Arbitration Act requires dismissal because of the arbitration pending before the ICC Court of Arbitration.

## II. DISCUSSION

*A. SCC is Subject to this Court's Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks the requisite personal jurisdiction over the defendant. If a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff ultimately bears the burden of proving the existence of a ground for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, the plaintiff need only make a prima facie showing of jurisdiction if the Court decides a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt of evidence at trial. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In the absence of such evidence, the Court will construe all relevant pleading allegations in the light most favorable to the plaintiff, and draw the most favorable inferences for the existence of jurisdiction. *Combs*, 886 F.2d at 676.

The Court performs a two-step inquiry to determine whether it has personal jurisdiction over a defendant. First, it considers whether the state's long-arm statute authorizes jurisdiction. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Second, it determines whether the assertion of jurisdiction complies with the constitutional requirements for due process. *Id.* The two inquiries may be interrelated in this case, however, because the Virginia long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause. *Peanut Corp. of Am. v. Hollywood*

3

*Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982); *see also John G. Kolbe, Inc. v. Chromodern Chair Co.*, 180 S.E.2d 664, 667 (1971) ("It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent possible under the due process clause.").

1. Virginia Long-Arm Statute

The Virginia Long-Arm Statute provides that a court may exercise personal jurisdiction "over a person . . . as to a cause of action arising from the person's [t]ransacting *any* business" in Virginia.[1] Va. Code. Ann. § 8.01-328.1(A)(1) (emphasis added). A single act of business by a non-resident is sufficient to confer jurisdiction, provided that the act is significant and gives rise to the cause of action. *John G. Kolbe, Inc.*, 180 S.E.2d at 667. The pertinent factors to consider in determining whether an act of business is significant include "(i) where any contracting occurred, and where the negotiations took place, (ii) who initiated the contract, (iii) the extent of the communications, both telephonic and written, between the parties, and (iv) where the obligations of the parties under the contract were to be performed." *Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*, 20 F. Supp. 2d 948, 952 (E.D. Va. 1998).

After considering these factors, I find that SCC "transacted business" in Virginia sufficient to satisfy the long-arm statute. Although the parties did sign the contract in Seoul, South Korea, the negotiations to that point had occurred in both Lynchburg and Seoul, and it was SCC, not M/A-COM, that had initiated contact. The parties communicated extensively during their negotiations, with SCC sending numerous letters, electronic messages, facsimiles, and telephone calls to M/A-

---

[1] Although M/A-COM has asserted alternative grounds for jurisdiction, including tortious injury under Va. Code §§ 8.01-328.1(A)(3)-(4), I need not consider these arguments because I find personal jurisdiction appropriate pursuant to Va. Code § 8.01-328.1(A)(1).

4

COM employees in Lynchburg. In addition, SCC employees traveled to Lynchburg on several occasions to discuss technical specifications for the data radio and to later inspect and test prototypes that had been designed and built at the Lynchburg facility. In sum, SCC engaged in numerous significant contacts with Virginia during the negotiating of the contract that forms the basis of M/A-COM's claims. Accordingly, I find that this Court may exercise jurisdiction pursuant to the Virginia long-arm statute.

2. Due Process Requirements

Even if the Virginia long-arm statute confers jurisdiction, the exercise of that jurisdiction must still comport with due process. This inquiry requires the Court to determine if the defendant had sufficient "minimum contacts" with Virginia that the exercise of personal jurisdiction over him would not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The determination of whether a party has sufficient "minimum contacts" requires consideration of "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of jurisdiction would be constitutionally reasonable" *Mitrano*, 377 F.3d at 407. In short, due process protects the defendant from having to defend himself in a forum in which he could not have anticipated being sued. *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980). Therefore, the defendant's actions must have been "directed at the forum state in more than a random, fortuitous, or attenuated way" in order to justify the exercise of jurisdiction over him. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).

5

Here, I find that SCC purposefully directed its activity toward Virginia and established sufficient "minimum contacts" that it reasonably could have anticipated being sued in a Virginia court. M/A-COM's claims arise from a contract negotiated, in part, in Virginia by SCC employees. This contract was initiated by SCC, which contacted M/A-COM regarding the design and construction of data only radios and ultimately negotiated a contract to purchase 15,000 such radios, and M/A-COM later designed and built prototypes of the radio in furtherance of the contract. These acts in concert establish that SCC did not merely direct contacts toward Virginia in a random or fortuitous way, but rather in a purposeful and deliberate manner to further their own economic interests. Accordingly, I find it reasonable to exercise personal jurisdiction over SCC in this case.

*B. The Parties' Dispute Must Be Decided by an Arbitrator*

The Federal Arbitration Act ("FAA") provides that any agreement to settle a dispute by arbitration in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong presumption in favor of enforcing arbitration agreements and requires, as a matter of law, that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This stay is mandatory; the district court is required to compel arbitration where (1) a valid arbitration agreement exists and (2) the issues in the case fall within its purview. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001).

6

It is undisputed that the underlying distribution agreement between M/A-COM and SCC contained an arbitration clause that provided for the arbitration of any and all disputes between the parties arising out of the International Distributor Agreement. Moreover, it is also undisputed that M/A-COM's claims in this matter—its claims of breach of contract and fraud in the inducement—arise from SCC's alleged failure to adhere to the September 4, 2003 letter agreement in which SCC agreed to purchase 15,000 data radios. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93–94 (4th Cir. 1996) (explaining that an arbitration clause that provides for arbitration of *any* disputes arising out of an agreement is very broad, requiring the parties to submit to arbitration if the plaintiff's claims either arise from the agreement or bear a "significant relationship" to the agreement). Nevertheless, M/A-COM argues that arbitration is not required in this matter because SCC has repudiated the agreement, thereby waiving its right to arbitration or, alternatively, terminating the arbitration agreement itself. In addition, M/A-COM argues that, pursuant to the doctrine of equitable estoppel, SCC is precluded from revoking its earlier repudiation of the arbitration agreement because M/A-COM acted in reliance of SCC's repudiation.

The Court is limited, however, in what issues it may consider in arbitration disputes and may consider only those disputes concerning the "question of arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "Questions of arbitrability" do not include every dispositive gateway question, but instead apply only in those "narrow circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter" rather than the arbitrator. *Id.* Therefore, proper "questions of arbitrability" for the Court to consider include, among other things, whether the parties are bound by a particular arbitration clause, whether the arbitration clause applies to a particular controversy, and whether the parties submitted a dispute to arbitration. *Id.*

7

at 84.

Procedural issues that arise out of the dispute and bear on its final disposition are for the arbitrator to decide, however, not this Court. *Id.* Thus, "the presumption is that the arbitrator should decide allegations of waiver, delay, . . . time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate."[2] *Id.* at 84–85 (citations omitted); *see also Davis v. ECPI College of Tech., L.C.*, 227 Fed. Appx. 250, 253 (4th Cir. 2007) (unpublished) ("Once it is clear that the parties agreed to arbitration, the validity and meaning of particular provisions within the arbitration clause are for the arbitrator to decide."); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 872 (8th Cir. 2004) (holding that question of whether waiver occurred is a matter for the arbitrator); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 46 (2d Cir. 2003) (finding that equitable defense of repudiation is a question to be decided by the arbitrator). Accordingly, I find that questions of whether SCC repudiated or waived its right to arbitration by filing its objection are matters for the arbitrator to decide.

Section 3 of the FAA requires a stay be entered, upon motion by any party, until arbitration has concluded on all issues covered by an arbitration agreement. 9 U.S.C. § 3. Nevertheless, dismissal is the proper remedy when all the issues in a matter before the Court are arbitrable. *Choice Hotels Int'l., Inc. v. BRS Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Therefore, I will dismiss this matter given that all of M/A-COM's claims fall within the arbitration clause.

---

[2] Courts will consider the question of waiver when a party chooses to litigate instead of referring the issue to an arbitrator, but that type of waiver is not at issue in this case because SCC filed their objection before the arbitrator, not this Court. *See, e.g., Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–218 (3d Cir. 2007).

8

## III. CONCLUSION

For the foregoing reasons, I will GRANT Defendant SCC's Motion to DISMISS or STAY (docket entry no. 8). Because I find that arbitration is required, I will ORDER this matter dismissed and stricken from the docket.

It is so ORDERED.

The Clerk of this Court shall certify copies of this Order to counsel of record.

ENTERED THIS 6th DAY OF FEBRUARY, 2008.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE